## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN NEY, Individually on behalf of himself and Derivatively on behalf of Nominal Defendant EQT CORPORATION, | Case No. _____ |
| Plaintiff, | |
| v. | |
| DAVID L. PORGES, JAMES E. ROHR, VICKY A. BAILEY, PHILIP G. BEHRMAN, KENNETH M. BURKE, A. BRAY CARY, JR., MARGARET K. DORMAN, STEVEN T. SCHLOTTERBECK, STEPHEN A. THORINGTON, LEE T. TODD, JR., and CHRISTINE J. TORETTI, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| v. | |
| EQT CORPORATION, | |
| Nominal Defendant. | |

## VERIFIED INDIVIDUAL AND SHAREHOLDER DERIVATIVE COMPLAINT
## FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff John Ney ("Plaintiff"), on behalf of himself as a shareholder of EQT Corporation ("EQT" or the "Company"), brings this Individual and Shareholder Derivative Complaint (the "Complaint") against EQT and the members of the board of directors of EQT (the "Board" or the "EQT Board") for violating Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The allegations of the Complaint are based on the knowledge of Plaintiff as to himself, and on information and belief, including the investigation of counsel and

review of publicly available information, as to all other matters.

## INTRODUCTION

1.      This action arises from material misstatements and/or omissions in proxy communications to be made to EQT shareholders with respect to EQT's proposed issuance of common stock (the "Issuance") and the Company's related acquisition of Rice Energy Inc. ("Rice") (the "Merger").  The individual defendants are the members of the EQT Board.

2.      On June 19, 2017, EQT and Rice entered into a merger agreement (the "Merger Agreement") pursuant to which EQT will acquire all of the outstanding shares of Rice common stock for total consideration of approximately $6.7 billion.  The overwhelming majority of the Merger consideration payable to Rice shareholders will be in the form of newly-issued shares of EQT common stock.  Because EQT will issue additional shares totaling more than 19.9% of its current outstanding common stock and because applicable stock exchange rules require an issuer, such as EQT, to obtain shareholder approval before such issuances, the Merger Agreement provides that the approval of EQT's shareholders is a necessary condition to closing the Merger.

3.      A portion of the Merger consideration will be paid in cash, and EQT is borrowing money to finance that cash payment.

4.      On July 27, 2017, EQT filed with the U.S. Securities and Exchange Commission (the "SEC") a Registration Statement on Form S-4 (the "Registration Statement"), which also serves as a draft of the proxy statement to be sent to EQT's shareholders to solicit their votes in favor of the Issuance.  According to the Registration Statement, Citigroup Global Markets Inc. ("Citi") served as EQT's exclusive financial advisor in connection with the Merger and

provided the EQT Board with an opinion that the Merger and Issuance are purportedly fair, from a financial point of view, to the Company.

5.      Additionally, the Registration Statement states that EQT agreed to pay Citi an advisory fee of $15 million, of which $13 million – or 86.6% – is contingent upon the Merger's consummation.

6.      The Registration Statement provides that in addition to its advisory work, Citi is also serving as the lead arranger and a lender on a $1.4 billion bridge loan (the "Bridge Loan") and certain additional financing (together with the Bridge Loan, the "Financing"), which EQT will use to help finance the Merger.

7.      Yet, the Registration Statement fails to disclose the amount of financing fees that Citi will receive for serving as the lead arranger for and a lender on the Bridge Loan or on the Financing.  This omitted information is patently material because it is imperative for EQT shareholders to be able to understand what factors might have influenced Citi's analytical efforts in providing a fairness opinion on the Merger and accompanying Issuance.  To be sure, because Citi is serving as lead arranger on the Financing and will receive fees based on the amounts loaned, Citi had a powerful incentive to advise EQT to maximize the cash portion of the merger consideration, which in turn would maximize the fees payable to Citi for arranging the Financing.  EQT shareholders voting on the Issuance would find this information concerning Citi's conflicts of interest material in determining how to vote.

8.      Injunctive relief is required to prevent Plaintiff from being forced to vote on the Issuance based on the materially incomplete and misleading Registration Statement, which fails to disclose the magnitude of fees that EQT expects to pay to Citi for the Financing.  Defendants' failure to disclose the information regarding Citi's financing fees and potential

conflict of interest constitutes a violation of Section 14(a) of the Exchange Act.  Injunctive relief is further required to ensure that the Board causes EQT and the Registration Statement to comply with the Exchange Act's disclosure requirements.

## THE PARTIES

9.    Plaintiff has been a beneficial owner of EQT's common stock since 2010.

10.    Nominal Defendant EQT is an integrated energy company with emphasis on Appalachian-area natural gas production that operates in two segments: EQT Production and EQT Midstream.  EQT is incorporated in the State of Pennsylvania and maintains its principal executive offices at 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222.  EQT's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "EQT."

11.    Defendant David L. Porges has been a director of the Company since 2002.

12.    Defendant James E. Rohr has been a director of the Company since 1996.

13.    Defendant Vicky A. Bailey has been a director of the Company since 2004.

14.    Defendant Philip G. Behrman has been a director of the Company since 2008.

15.    Defendants Kenneth M. Burke has been a director of the Company since 2012.

16.    Defendant A. Bray Cary, Jr. has been a director of the Company since 2008.

17.    Defendant Margaret K. Dorman has been a director of the Company since 2012.

18.    Defendant Steven T. Schlotterbeck has been a director of the Company since 2016.

19.    Defendant Stephen A. Thorington has been a director of the Company since 2010.

20.    Defendant Lee T. Todd, Jr. has been a director of the Company since 2003.

21.    Defendant Christine J. Toretti has been a director of the Company since 2015.

22.   In addition to being referred to herein as the "Board" or "EQT Board," the defendants listed in paragraphs 11 to 21 above are also collectively referred to herein as the "Director Defendants."

23.   EQT and the Director Defendants are collectively referred to herein as the "Defendants."

24.   Relevant non-party Rice is an independent natural gas and oil company focused on the acquisition, exploration and development of natural gas and oil properties in the Appalachian Basin.

## JURISDICTION

25.   The claims asserted herein arise under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and the rules and regulations promulgated thereunder, including SEC Rule 14a-9, 17 C.F.R. § 240.14a-9.

26.   This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

27.   Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), (c) and (d).  The Company has its principal place of business in this District, and many of the acts and deliberations that constitute violations of law complained of herein, including the dissemination to the public of solicitation statements that omit material facts, occurred in this District.

28.   In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of a national securities exchange.

## SUBSTANTIVE ALLEGATIONS

### I.      EQT Negotiates The Merger With Rice

29.    The Registration Statement states that EQT and Rice began discussions toward a combination of the two companies in June 2015, hiring lawyers and signing a confidentiality agreement.

30.    These discussions waned until May 2016, when, according to the Registration Statement, EQT hired Citi to serve as the Company's financial advisor in connection with the potential acquisition of Rice, after Rice's senior management informed EQT that Rice was open to receiving takeover proposals.

31.    The Registration Statement states that, following additional discussions and the exchange of non-public information between the two companies, EQT and Rice exchanged proposals for EQT's all-stock acquisition of Rice at exchange ratios ranging from 0.33 to 0.35 EQT common shares for each share of Rice common stock.  In other words, the proposals at the time contemplated that, for each share of Rice common stock, EQT would issue from 0.33 to 0.35 shares of its common stock as merger consideration.  Following market price movements in each of EQT's and Rice's common stock, however, talks between EQT and Rice broke off in August 2016.

32.    Rice and EQT resumed discussions in the spring of 2017, when EQT proposed on May 8, 2017 to acquire Rice in an all-stock transaction at a fixed exchange ratio of 0.43 shares of EQT common stock for each share of Rice common stock.

33.    According to the Registration Statement, the parties' discussions then began to include a cash payment in addition to a fractional share of EQT to be paid for each share of Rice common stock.

34.   The Registration Statement represents that on May 22, 2017, Rice's senior management met with EQT's senior management and proposed a combination in which Rice shareholders would receive 0.43 shares of EQT common stock and $5.00 in cash for each share of Rice common stock (roughly equivalent to 0.52 shares of EQT common stock for each share of Rice common stock and an implied value of $29.26 per share of Rice common stock).

35.   According to the Registration Statement, on May 24 and 25, 2017, Rice's chief executive officer ("CEO") and EQT's chief financial officer ("CFO") held a series of discussions concerning the appropriate exchange ratio.   Ultimately, each agreed to take a proposal to their respective boards for a combination in which Rice shareholders would receive 0.37 shares of EQT common stock and $5.30 in cash for each share of Rice common stock (roughly equivalent to 0.465 of a share of EQT common stock for each share of Rice common stock and an implied value of $26.47 per share of Rice common stock based on EQT's May 23, 2017 closing stock price).   EQT's CFO told Rice's CEO that this represented EQT's firm and final offer.

36.   On May 31, 2017, the EQT Board met, together with members of EQT management, the Board's outside counsel, and Citi.   At that meeting, the Registration Statement states, the Board authorized EQT management, its lawyers and Citi to proceed with negotiations with Rice.

37.   That evening, Rice's CEO telephoned EQT's CFO that Rice was willing to accept most of EQT's proposed terms.   According to the Registration Statement, over the next several weeks, the two sides worked on various open issues relating to the Merger.   Ultimately, on June 15, 2017, according to the Registration Statement, Citi conveyed to Rice's financial

advisor EQT's proposals to resolve these open issues, primarily concerning compensation and retention for Rice employees, deal protections and post-closing Board representation.

38.   The Registration Statement states that on June 18, 2017, Rice's board of directors accepted EQT's revised offer and approved the Merger.  The next morning, the EQT Board met telephonically, together with EQT management, EQT's outside lawyers, and Citi, to discuss and review the draft merger agreement and to consider the proposed transaction.

39.   At the meeting, according to the Registration Statement, Citi reviewed with the EQT Board its financial analysis of the Merger consideration.  Citi also rendered its opinion that the Merger was purportedly fair, from a financial point of view, to EQT.  The EQT Board, purportedly relying on Citi's opinion of financial fairness, then approved the Merger and related Issuance.

40.   The Registration Statement states that after the June 19, 2017 Board meeting, EQT and Rice executed the Merger Agreement.  Under the Merger Agreement, each outstanding share of Rice common stock will convert into the right to receive 0.37 shares of EQT common stock and $5.30 in cash.  Based on the closing price of EQT's common stock on the NYSE on the last trading day before the public announcement of the Merger (*i.e.*, June 16, 2017), the 0.37 exchange ratio together with the $5.30 in cash represented approximately $27.04 in value for each share of Rice common stock.

41.   Later on June 19, 2017, EQT publicly announced that it would buy Rice for $6.7 billion in cash and stock.  EQT's stock tumbled approximately 10 percent on news of the Merger.

**II.    Citi's Dual Incentive for EQT to Acquire Rice**

42.   In connection with the Merger, EQT agreed to pay Citi for its advisory services an aggregate fee of $15 million, of which $13 million – or 86.6% – is contingent upon

consummation of the Merger.  That $13 million contingency fee was not, however, Citi's only motivation for advising the EQT Board to pursue an expensive acquisition of Rice.  Rather, Citi also stands to earn an undisclosed sum for financing the Merger.

43.   Excluding any funds required to refinance and/or pay off any Rice indebtedness, EQT anticipates that it will need approximately $1.8 billion to finance the Merger and pay related fees and expenses.  The $1.8 billion is to be funded through a combination of (a) EQT's available cash on hand, (b) borrowings under EQT's existing revolving credit facility, (c) the issuance and sale by EQT of senior unsecured notes, and/or (d) borrowings under a new bridge loan facility.

44.   In connection with the Merger, EQT entered into a commitment letter with Citi, dated June 19, 2017, pursuant to which Citi and certain of its affiliates committed to provide a $1.4 billion senior unsecured 364-day term loan bridge facility (previously defined as the "Bridge Loan") to EQT.[1]   Citi acknowledges that it will receive fees for its services in connection with the Bridge Loan, and discloses in its June 19, 2017 fairness opinion to the Board that Citi "expect[s] to participate in a bridge facility and related financings in connection with the Merger[], for which services [Citi] *will receive compensation, including acting as lead arranger for, and as a lender under, such financings*."  (Emphasis added).

45.   Citi's fairness opinion does not describe the nature or magnitude of, or the fees Citi expects to earn through, the "related financings in connection with the Merger."

### III.   JANA Publicly Condemns the Merger

46.   Activist investment firm JANA Partners LLC ("JANA") began acquiring shares of EQT in April 2017.  The Merger's announcement reportedly took JANA by surprise, and

---

[1] On July 14, 2017, EQT entered into joinder letters to the June 19 commitment letter, through which certain additional banks have committed to finance a portion of the Bridge Loan.

since then JANA has been vocally opposed to EQT acquiring Rice.  On July 3, 2017, JANA

filed a Form 13D with the SEC disclosing a 5.8 percent stake in EQT.  JANA's July 3, 2017

filing stated that:

> JANA, potentially with the assistance of the other Reporting Persons, may also take other steps to increase shareholder value as well as pursue other plans or proposals that relate to or would result in any of the matters set forth in subparagraphs (a)-(j) of Item 4 of Schedule 13D, excluding (i) acquiring a control stake in [EQT]'s Shares, or grouping with any other party or parties to do so, (ii) engaging in an extraordinary transaction, such as a merger, with the Issuer, or acquiring a material amount of [EQT]'s assets, or grouping with any other party or parties to do either, or (iii) seeking to exert negative control over the important corporate actions of [EQT], or grouping with any other party or parties to do so, although the Reporting Persons may seek to influence such actions through customary means including presenting its views for consideration to the Issuer, shareholders and other interested parties, privately or publicly, and, if necessary, through the exercise of its shareholder rights including the right to propose new directors for the Issuer's board of directors.

47.   JANA also announced that it would use its 5.8 percent stake in EQT to mount a

campaign to persuade EQT shareholders to vote down the Company's acquisition of Rice.

48.   In a July 5, 2017 letter to the EQT Board, JANA Managing Partner Barry

Rosenstein ("Rosenstein") stated that JANA invested in EQT because it believed that the

Company was trading at a substantial discount to its intrinsic value and that JANA could

unlock this value by immediately separating EQT Production and EQT Midstream into two

separate companies.  Rosenstein also stated that JANA believed this separation could create as

much as $4.5 billion (or $26 per share) of value for EQT shareholders.

49.   The July 5, 2017 letter also outlined JANA's opposition to the Merger.  Among

other things, JANA stated that by financing the Merger with over ninety million shares of EQT

stock, the Company was diluting EQT shareholders' upside in a potential future separation of

EQT.[2]   JANA also complained in the July 5 letter that:

> While EQT claims that a Rice acquisition would generate $2.5 billion of NPV synergy value through G&A savings and increased capital efficiency (with the potential for limited additional synergies from reductions in lease operating expenses), the acquisition premium of $1.8 billion which would be paid by existing EQT shareholders to Rice shareholders exceeds EQT shareholders' 65% pro forma ownership of the claimed synergy value, which amounts to only $1.6 billion, meaning on day one EQT shareholders would be transferring an additional $200 million of value to Rice shareholders on top of the upside they are forsaking from an eventual separation.

50.   JANA also criticized the Merger's purported synergies.  JANA noted that EQT's

calculation of the $2.5 billion of expected synergies from the Company's acquisition of Rice

appears highly questionable.  The July 5, 2017 letter stated that by JANA's own estimate,

actual synergies from the Merger could fall short by approximately $1.3 billion.

51.   Possibly in response to JANA's July 5, 2017 letter, in a July 27, 2017 analyst

presentation, EQT illustrated additional potential synergies from the Merger (the "Post Hoc

Synergies") worth up to $7.5 billion, three times the amount of the synergies originally

announced by EQT and Rice.

52.   On July 31, 2017, Rosenstein sent another letter to the EQT Board on behalf of

JANA.  The July 31 letter reiterated the rationale for JANA's continued opposition to the

Merger, and questioned the size and legitimacy of the Post Hoc Synergies.

**IV.   EQT Issues the Materially Deficient Registration Statement and Joint Proxy**

53.   In the Issuance, EQT will issue a number of shares of its common stock

exceeding 19.9% of EQT's currently outstanding common stock to Rice shareholders as

---

[2] The Company's stock price peaked at more than $100 per share in mid-2014 and by late-2015 had dropped to less than $50 per share.  The Company's stock price then recovered briefly, but at the time of the Merger announcement was trading around $53 per share.  Thus, the Issuance is potentially undervalued and dilutive to EQT shareholders.

Merger consideration.   Under the applicable NYSE rules, EQT is required to obtain its shareholders' approval of the Issuance.  Accordingly, EQT will hold a special meeting of its shareholders to vote on the Issuance (the "Special Meeting").[3]   Approval of the Issuance requires the affirmative vote of a majority of the votes cast by holders of EQT's common stock.

54.    On July 27, 2017, in connection with soliciting EQT shareholders' support for the Issuance at the Special Meeting, EQT filed with the SEC the Registration Statement, which also serves as a joint proxy statement for the solicitation of shareholder votes by both EQT and Rice.  The Registration Statement fails to disclose Citi's compensation for serving as the lead arranger and a lender under the Bridge Loan and the other Merger-related financings.  The Registration Statement merely states that:

> Citi and certain of its affiliates expect to participate in a bridge facility and related financings in connection with the mergers, for which services Citi and such affiliates will receive compensation, including acting as lead arranger for, and as a lender under, such financings.  (Registration Statement at 105)

55.    Citi's financing-related fees may well exceed Citi's $15 million advisory fee for its work on the Merger.

56.    The omission of Citi's financing fees and *total* compensation in connection with the Merger is material to EQT shareholders deciding whether to approve the Issuance.  As explained above, Citi assisted EQT in negotiating the Merger and provided an opinion to the Board regarding the Issuance's purported financial fairness to EQT.  Thus, Citi's incentive to

---

[3] At the Special Meeting, EQT will also propose that its shareholders approve proposals to (i) amend and restate EQT's Restated Articles of Incorporation to provide that the number of members of the Board be not less than five nor more than thirteen and (ii) approve the adjournment of the Special Meeting, if necessary, to solicit additional proxies if there are not sufficient votes to approve the Issuance.

see the Merger consummated frames its credibility as an adviser to the Board on the Merger and the related Issuance.

57.   Moreover, because investment banker fees for arranging debt financing are typically driven by the amount of the loan for which the bank arranged, Citi had a financial incentive to advise EQT to pay more in cash as Merger consideration for Rice, so that EQT would have to borrow more money from Citi and consequently pay more financing fees to Citi.

58.   The omission of Citi's financing-related fees and total fees payable by EQT is particularly material to EQT shareholders in this instance because Citi served as the Board's sole financial advisor in connection with the Merger and the related Issuance.  And, one large shareholder, JANA is encouraging other EQT shareholders to reject the Issuance in favor of another strategic alternative, which JANA claims is financially superior for EQT.   In order to fairly assess the Issuance and decide how to vote on it, and to assess whether to rely on Citi's fairness opinion in casting that vote, EQT shareholders, such as Plaintiff, are entitled to know all material information concerning Citi's conflicts of interests.

59.   Without this material information, EQT shareholders will be unable to cast an informed vote on the Issuance and fully exercise their franchise rights in connection with the Merger.

## DERIVATIVE AND DEMAND ALLEGATIONS

60.   Plaintiff brings this action derivatively in the right and for the benefit of EQT to redress the Director Defendants' derivative violations of the federal securities laws.

61.   Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

62.    As a result of the facts set forth herein and the planned upcoming Special Meeting, Plaintiff has not made any demand on the Board to institute this action against the Director Defendants.  Under Pennsylvania law, which governs this Court's analysis concerning a pre-suit demand on the Board, demand is excused if immediate and irreparable harm to the Company would otherwise result.  Here, the uninformed votes on the Issuance would cause irreparable harm and the Company is currently in violation of the federal securities laws as a result of the Director Defendants' conduct in approving and authorizing the filing of the Registration Statement, causing immediate irreparable harm to the Company.  Accordingly, a pre-suit demand is not required under 15 Pa.C.S. § 1781 and Plaintiff will deliver a demand to the Board promptly upon the filing of this Complaint.

63.    This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

## CLAIMS FOR RELIEF

## COUNT I

**(Individual and Derivative Claim Against the Director Defendants For Violations of Section 14(a) of the Exchange Act)**

64.    Plaintiff repeats and re-alleges each and every allegation above as if set forth in full herein.

65.    Plaintiff brings this claim individually for himself and derivatively on behalf of EQT.

66.    SEC Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading as to any material fact, or which

omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

67.    The Registration Statement violates § 14(a) of the Exchange Act and SEC Rule 14a-9 because the Director Defendants omitted material facts necessary to make the Registration Statement not false and misleading, specifically material facts regarding Citi's compensation in connection with the Merger and the Issuance.  The misstated, omitted and/or undisclosed information is necessary to permit shareholders to make an informed voting decision on the Issuance.

68.    The Director Defendants, jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Registration Statement.   EQT issued the Registration Statement.  The Director Defendants signed the Registration Statement.

69.    By means of the Registration Statement, Defendants seek to secure Plaintiff's and other EQT shareholders' approval of the Issuance, and solicit proxies from Plaintiff and other EQT shareholders.

70.    Plaintiff and the Company have suffered and will continue to suffer irreparable harm if the misleading and omitted information in the Registration Statement is not corrected sufficiently in advance of the Special Meeting to enable the Registration Statement to contain all material information.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

A.      Enjoining the Special Meeting unless and until the Director Defendants cure the materially incomplete and misleading Registration Statement;

B.      Granting appropriate injunctive relief to remedy the Director Defendants' violations of the federal securities laws;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses; and

D.      Awarding Plaintiff such other and further relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.


Dated:  August 14, 2017

                                    *s/ Michael C. Wagner*_____
                                    Michael C. Wagner (Pa. Bar No. 78756)
                                    mwagner@ktmc.com
                                    Henry Young
                                    hyoung@ktmc.com
                                    **KESSLER TOPAZ**
                                    **MELTZER & CHECK, LLP**
                                    280 King of Prussia Road
                                    Radnor, Pennsylvania 19087
                                    (610) 667-7706

                                    Jeremy Friedman
                                    Spencer Oster
                                    David Tejtel
                                    **FRIEDMAN OSTER & TEJTEL PLLC**
                                    240 East 79th Street, Suite A
                                    New York, NY  10075
                                    Phone: (888) 529-1108

                                    *Counsel for Plaintiff*

## VERIFICATION

I, JOHN NEY, hereby verify that I have authorized the filing of the attached Individual and Shareholder Complaint for Violations of the Federal Securities Laws ("Complaint"), that I have reviewed the Complaint, and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 8/14/2017

JOHN NEY